| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
|---|---|
| Caption in Compliance with **D.N.J. LBR 9004-1(b)** <br><br> James A. Kellar <br> McCARTER & ENGLISH, LLP <br> 100 Mulberry Street <br> Newark, New Jersey 07102 <br> (973) 622-4444 <br> jkellar@mccarter.com <br><br> *Counsel for NStar Electric Company, Eastern Massachusetts, Connecticut Light & Power Company, Yankee Gas Services Company, Public Service Company of New Hampshire, Consolidated Edison Company of New York, Inc., Orange and Rockland Utilities, Inc., PECO Energy Company, The Potomac Electric Power Company, Delmarva Power & Light Company, Atlantic City Electric Company, Potomac Edison Company, Jersey Central Power & Light Company, Boston Gas Company, KeySpan Energy Delivery Long Island, KeySpan Energy Delivery New York, Massachusetts Electric Company, Public Service Electric and Gas Company and Baltimore Gas and Electric Company* | |
| In re: <br><br> MODELL'S SPORTING GOODS, INC., *et al.*, <br>            Debtors. | Chapter 11 <br><br> Case No. 20-14179 (VFP) <br><br> Jointly Administered <br><br> Honorable Vincent F. Papalia |

**RESPONSE OF CERTAIN UTILITY COMPANIES
TO THE ORDER TEMPORARILY SUSPENDING THE DEBTORS'
CHAPTER 11 CASES PURSUANT TO 11 U.S.C. §§ 105 AND 305**

NStar Electric Company, Eastern Massachusetts, Connecticut Light & Power

Company, Yankee Gas Services Company, Public Service Company of New Hampshire,

1

Consolidated Edison Company of New York, Inc., Orange and Rockland Utilities, Inc., PECO Energy Company, The Potomac Electric Power Company, Delmarva Power & Light Company, Atlantic City Electric Company, Potomac Edison Company, Jersey Central Power & Light Company, Boston Gas Company, KeySpan Energy Delivery Long Island, KeySpan Energy Delivery New York, Massachusetts Electric Company, Public Service Electric and Gas Company and Baltimore Gas and Electric Company (collectively, the "Utilities"), files this *Response* to the *Order Temporarily Suspending the Debtors' Chapter 11 Cases Pursuant to 11 U.S.C. §§ 105 and 305* (the "Stay Order")(Docket No. 166), and set forth the following:

## Introduction

The Stay Order authorized the Debtors' to cease their business operations, including the Store Closing Sales at all 134 of their retail stores as well as fulfillment of orders on the e-commerce site as a result of the COVID-19 crisis to April 30, 2020 (the "Bankruptcy Suspension"). The Stay Order also provides that "[a]ll payments of expenses other than those essential expenses set forth in the Modified Budget are hereby deferred, provided that all parties reserve all rights to argue that obligations allegedly accrued during the Operational Suspension and/or Bankruptcy Suspension are or are not waived, abated, or otherwise not subject to payment." At the March 25, 2020 Emergency Hearing, Debtors' counsel stated that line item 6 in the Modified Budget "Non-Personnel Carrying Costs" included utility expenses during the proposed Bankruptcy Suspension period. $300,000 was budgeted in line item 6 through the week ending May 2, 2020. Attached hereto at Exhibit "A" are Declarations on behalf of the Utilities which reflect that the Debtors **have not paid any post-petition bills issued by the Utilities** during the Bankruptcy Suspension even though (i) utility

2

charges are considered an essential expense to preserve the Debtors' bankruptcy estates, (ii) the Modified Budget includes funds to pay post-petition utility charges, and (iii) the Debtors continued to require natural gas and electric to heat and/or cool their stores and electricity for their alarm systems during the Bankruptcy Suspension. The Court should compel the Debtors to pay the Utilities' post-petition charges for providing essential goods/services to the Debtors during the Bankruptcy Suspension.

The Court has scheduled a hearing to take place on April 30, 2020 to consider a further extension of the Bankruptcy Suspension. As long as the states in which the Debtors operate have stay in place orders, the Utilities recognize that the Bankruptcy Suspension will need to be extended and the Utilities do not object to a further extension, subject to the following clarification: (1) what amounts have been budgeted for the payment of the Utilities' post-petition charges during the current Bankruptcy Suspension and any further extensions; (2) how those budgeted amounts were derived; and (3) when the Utilities' post-petition bills will be paid.

## Facts

### Procedural Facts

1. On March 11, 2020, the Debtors commenced their cases under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are now pending with this Court. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

2. The Debtors' chapter 11 bankruptcy cases are being jointly administered.

3. On the Petition Date, the Debtors filed the Utility Motion. On March 13, 2020, the Court entered an Interim Order [Docket No. 54] approving the Utility Motion and establishing a March 31, 2020 objection deadline and an April 6, 2020 final hearing, which did not occur based on the following pleadings.

4. On March 23, 2020, the Debtors filed the *Debtors' Verified Application In Support of Emergency Motion For Entry of An Order Temporarily Suspending Their Chapter 11 Cases Pursuant To 11 U.S.C. §§ 105 and 305* (the "Stay Motion")(Docket No. 115)

5. Through the Motion, the Debtors sought to suspend their business operations, including the Store Closing Sales at all 134 of their retail stores as well as fulfillment of orders on the e-commerce site as a result of the COVID-19 crisis (the "Operational Suspension"). Motion at ¶ 21.a.

6. During the Operational Suspension, the Debtors intended to use cash collateral to pay certain critical expenses, including their remaining employees, **utilities**, insurance, and trust fund taxes pursuant to a modified budget (the "Modified Budget"). Motion at ¶ 21.b.

7. At the March 25, 2020 Emergency Hearing, Debtors' counsel stated that the amounts budgeted for the payment of post-petition utility expenses during the proposed stay period were included in line item 6 "Non-Personnel Carrying Cost" of the Modified Budget. Debtors' counsel, however, did not indicate what specific amount were budgeted for the payment of post-petition utility expenses in the Modified Budget. Instead, Debtors' counsel, without any evidentiary basis, stated that they expected utility usage to decrease significantly during the proposed stay period because the Debtors are closing their stores.

8. Line item 6, "Non-Personnel Carrying Cost," in the Modified Budget includes $50,000 per week for the 9 week period from March 28, 2020 to May 23, 2020 for a total of $450,000, and $300,000 budgeted through the week ending May 2, 2020. It is not clear what portion of the foregoing $300,000 through May 2, 2020 is attributable to post-petition utility expenses.

9. Line item 8, "Occupancy Costs," in the Modified Budget does not budget any monies until the week ending August 1, 2020 when $13,449,000 is budgeted. Upon information and belief, it appears that the Debtors may take the position that they will not pay any post-petition utility charge until August 1, 2020 at the earliest, and pay all post-petition utility charges at that time. The Court should reject that position and require the Debtors to timely pay all post-petition invoices from the Utilities for essential and necessary utility goods/services to preserve the Debtors' bankruptcy estates.

10. On March 26, 2020, the Utilities filed a Response [Docket No. 160] to the Stay Motion seeking a clarification of what amounts were set aside for the payment of post-petition utility expenses and how the amount was derived.

11. After a subsequent hearing on March 27, 2020, the Court entered the Stay Order.

12. The Stay Order authorized the Debtors' to cease their business operations, including the Store Closing Sales at all 134 of their retail stores as well as fulfillment of orders on the e-commerce site as a result of the COVID-19 crisis to April 30, 2020 (the "Bankruptcy Suspension"). Stay Order at ¶ 3.a.

13. The Stay Order also provides that "[a]ll payments of expenses other than those essential expenses set forth in the Modified Budget are hereby deferred, provided that all parties reserve all rights to argue that obligations allegedly accrued during the Operational Suspension and/or Bankruptcy Suspension are or are not waived, abated, or otherwise not subject to payment." Stay Order at ¶ 2.c.

14. The Court scheduled a hearing to take place on April 30, 2020 to consider a further extension of the Bankruptcy Suspension. Stay Order at ¶ 2.

15. On April 20, 2020, the Debtors' filed the *Notice of Debtors' Intent To Seek a Further Suspension of Their Chapter 11 Cases Through and Including May 31, 2020* (the "Notice of Intent")(Docket No. 234). The Notice of Intent provides that the Debtors intend to seek a further suspension of their Chapter 11 cases through and including May 31, 2020, without prejudice to seek additional time.

## Discussion

16. Utility charges are considered an essential expense to preserve the Debtors' bankruptcy estates, with $300,000 budgeted in line item 6 of the Modified Budget to pay for such essential charges through May 2, 2020.

17. Attached hereto as Exhibit "A" are Declarations on behalf of the Utilities reflecting that the Debtors **have not paid any post-petition bills issued by the Utilities** during the Bankruptcy Suspension even though (i) utility charges are considered an essential expense to preserve the Debtors' bankruptcy estates, (ii) the Modified Budget includes funds to pay post-petition utility charges, and (iii) the Debtors continued to require natural gas and

electric to heat and/or cool their stores and electricity for their alarm systems during the Bankruptcy Suspension.

18. The Stay Order provides that the Debtors' professionals are authorized to draw on their respective retainers to pay themselves 80% of their fees and 100% of their expenses during the Bankruptcy Suspension. Stay Order at ¶ 2.g. Simply put, it is unjust that the Utilities have not received any payments for essential post-petition utility charges during the Bankruptcy Suspension but Debtors' counsel continues to obtain payment for their services. The Court should compel the Debtors to pay the Utilities' post-petition charges for providing essential goods/services to the Debtors during the Bankruptcy Suspension.

19. Although the Debtors have included the Utilities in the group of creditors that are to be paid during the proposed Bankruptcy Suspension, it is not clear what sums have been allocated to the payment of post-petition utility expenses and if they are sufficient. The Utilities do not dispute that utility usage decreased because the Debtors' stores have closed during the Bankruptcy Suspension, but not significantly because the largest portion of the monthly utility bills are attributable to heat and/or air conditioning that the stores will require even if they are closed.

20. Finally the Utilities do not oppose a further extension of the Bankruptcy Suspension until such time that the applicable states in which the Debtors operate withdraw applicable stay in place orders, thereby allowing the Debtors to open their stores to the public. However, the Utilities' do object to the Debtors taking the position that they will not pay any post-petition utility charge until August 1, 2020 at the earliest, and pay all accrued post-petition utility charges at that time. If the Debtors are allowed to avoid paying post-petition

utility bills through August 2020, along with other post-petition expenses, that is only going to delay the inevitable outcome of the Debtors becoming administratively insolvent, leaving them no other option but conversion to Chapter 7 as occurred in *In re Art Van Furniture, LLC, et. al, JA Case No. 20-10553 (CSS)* (Delaware). The Court should require the Debtors to timely pay all post-petition invoices from the Utilities for essential and necessary utility goods/services to preserve the Debtors' bankruptcy estates.

WHEREFORE, the Utilities request the following:

A. An explanation as to what has been budgeted for essential post-petition utility expenses and how the foregoing amount was derived for the Utilities to address whether the foregoing amounts are correct;

B. An explanation from the Debtors as to why none of the Utilities' post-petition bills have been paid even though the Modified Budget contains monies to pay those bills;

C. An Order compelling the Debtors to pay post-petition bills from the Utilities; and

D. For such other relief as this Court deems just and proper.

[Remainder of Page Left Blank]

Dated: April 24, 2020

McCARTER & ENGLISH, LLP

*/s/ James A. Kellar*
James A. Kellar
McCARTER & ENGLISH, LLP
100 Mulberry Street
Newark, New Jersey 07102
Telephone: (973) 622-4444
E-mail:  jkellar@mccarter.com

*Counsel for NStar Electric Company, Eastern Massachusetts, Connecticut Light & Power Company, Yankee Gas Services Company, Public Service Company of New Hampshire, Consolidated Edison Company of New York, Inc., Orange and Rockland Utilities, Inc., PECO Energy Company, The Potomac Electric Power Company, Delmarva Power & Light Company, Atlantic City Electric Company, Potomac Edison Company, Jersey Central Power & Light Company, Boston Gas Company, KeySpan Energy Delivery Long Island, KeySpan Energy Delivery New York, Massachusetts Electric Company, Public Service Electric and Gas Company and Baltimore Gas and Electric Company*