UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in compliance with D.N.J. LBR 9004-2**

OLSHAN FROME WOLOSKY LLP
Adam H. Friedman, Esq. (*pro hac pending*)
Jonathan T. Koevary, Esq. (*pro hac pending*)
Scott A. Shaffer, Esq.
744 Broad Street, 16th Floor
Newark, New Jersey 07102
        -and-
1325 Avenue of the Americas
New York, NY 10022
Tel.: (212) 451-2265
Fax: (212) 451-2222

*Attorneys for 150 Broadway NY Associates, LP*

In Re:
MODELL'S SPORTING GOODS, INC., et al.[1]
                Debtors.

Case No.: 20-14179 (VFP)

(Jointly Administered)

Chapter: 11

Hearing Date: April 30, 2020, 10:00 a.m.

Judge: Vincent F. Papalia

## OBJECTION OF 150 BROADWAY NY ASSOCIATES, LP
## TO THE ENLARGEMENT OF THE SUSPENSION PERIOD
## AND REQUEST FOR PAYMENT OF ACCRUED POSTPETITION OBLIGATIONS

Landlord 150 Broadway NY Associates, LP. ("150 Broadway") by and through undersigned counsel, hereby respectfully: (i) objects to the enlargement of the Suspension Period (as defined below) to the extent enlargement would excuse the above captioned debtors and debtors

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: Modell's Sporting Goods, Inc. (9418), Modell's II, Inc. (9422), Modell's NY II, Inc. (9434), Modell's NJ II, Inc. (9438), Modell's PA II, Inc. (9426), Modell's Maryland II, Inc. (9437), Modell's VA II, Inc. (9428), Modell's DE II, Inc. (9423), Modell's DC II, Inc. (9417), Modell's CT II, Inc. (7556), MSG Licensing, Inc. (8971), Modell's NH, Inc. (4219), Modell's Massachusetts, Inc. (6965) and Modell's Online, Inc. (2893). The Debtors' corporate headquarters is located at 498 Seventh Avenue, 20th Floor, New York, New York 10018.

5388675-1

in possession (the "Debtors") from full performance of their post-petition obligations to 150 Broadway later than May 11, 2020; and (ii) requests payment of accrued post-petition obligations in connection therewith (the "Objection"). In support of its Objection, 150 Broadway respectfully states as follows:

## INTRODUCTION

1.  150 Broadway recognizes that the COVID-19 pandemic is unprecedented, and that it is appropriate for the Bankruptcy Court to fashion some form of relief to assist debtors during this crisis. However, the devastating impact of the pandemic is not relegated to the Debtors alone. While 150 Broadway has no objection to reasonable relief, any relief must fairly balance the interests and statutory (and Constitutional) rights and protections of landlords. The relief sought by the Debtors does not seek such an equitable or balanced solution, but instead, incredibly seeks to strip the landlords' of their property rights in their own premises. The present climate is challenging for all parties, but that is not a basis to abandon the unequivocal requirements of the Bankruptcy Code and to require landlords, without compensation or consent, to allow the Debtors to use and occupy premises, and to allow the senior lenders to safely store and sell their collateral, without payment or protection to the very landlords who are storing and preserving the lenders collateral.

2.  The Bankruptcy Code requires the Debtors to pay all of their rent obligations for the post-petition occupation of 150 Broadway's premises when due under the Lease (defined below). There is only one exception: the Court may extend the deadline to pay rent for up to 60 days after the petition date for cause. As the Petition Date herein was February 11, 2020, the 60-day period expires on Sunday, May 10, 2020. Nevertheless, the Debtors have now noticed their intention to seek an extension of the suspension period beyond the original suspension date of April 30th, "through and including May 31, 2020, without prejudice to the Debtors' right to seek

2

5388675-1

additional time." [Dkt. #234]. 150 Broadway objects to any extension or suspension of the requirement to pay rent beyond the 60-day period authorized and limited by the Bankruptcy Code and seeks payment of all present and past due post-petition obligations on or before that date.

3. Furthermore, while a temporary suspension is understandable under current circumstances, any such suspension must have built-in protections in place. Simply, the Debtors should present clear evidence to the Court that they have financing from the existing cash collateral lenders (or another party)—funded, reserved and earmarked—to pay 150 Broadway's accruing post-petition rent. Anything less places far too much risk upon 150 Broadway and threatens the administrative solvency of these chapter 11 cases. Unpaid rent and other administrative expenses continue to amass without the Debtors generating any revenues, without any certainly as to when stores may re-open (the budget appears to assume a May 30th opening), and even when they do open, without any visibility on how consumers may (or may not) support a post-COVID-19 "going out of business" liquidation sale.

4. The passage of more time without funds fully committed and reserved to pay all post-petition rent, would be potentially catastrophic for the administration of these cases if weeks or months of continued closure occurs. Proof of reserved and earmarked funds, a "carve out" in favor of 150 Broadway (like the estate professionals have been afforded and protected with), or a section 506(c) surcharge order are the very minimum required to prevent what we all fear: a post-pandemic "going out of business" sale for the sole benefit of the lenders while the bankruptcy estates and creditors are left holding the bag.

## BACKGROUND

5. Pursuant to that certain lease dated December 30, 2005 (as amended, the "Lease"), by and between 150 Broadway and Debtor Modell's II NY Inc., Modell's II NY Inc., is a tenant at 150 Broadway, New York, New York.

5388675-1

6. The past due rent for March and April totals $90,419.30 including $53,671.94 of base rent that due April 1, 2020 and "stub rent" of $34,320.39 (the "Unpaid Stub Rent"). An additional $53,671.94 of base rent will come due on May 1, 2020 and there may be other obligations due and owing under the lease from the Debtors between now and May 1st, including but not limited to attorneys' fees as provided under the Lease.

7. On March 27, 2020 this Court entered its Order Temporarily Suspending the Debtors' Chapter 11 Cases Pursuant to 11 U.S.C. §§ 105 and 305 [Dkt. #166] (the "Suspension Order"). The Suspension Order essentially suspended all operations and most payments—including payments to landlords—through April 30th (the "Suspension Period") without prejudice to the Debtors' right to seek further extension on shortened notice.

8. Paragraph 2 of the Suspension Order provides in pertinent part that: "[a]ny requests for alternative relief or objections to a further extension of the Suspension Period shall be filed on or before April 24, 2020 at 5:00 p.m. and any responses thereto shall be filed on or before April 28, 2020 at 5:00 p.m." The Debtors now seek a further extension through and including May 31st.

9. 150 Broadway brings this Objection within the procedures ascribed by the Suspension Order. Specifically, 150 Broadway: (i) objects to a further enlargement of the Suspension Period to the extent that the enlargement would relieve the Debtors of performing all of their post-petition obligations to 150 Broadway and (ii) as unequivocally required by Bankruptcy Code section 365(b), requests payment of unpaid and related administrative rent due under the Lease.

# OBJECTION

**A.    Neither Section 105(a) or 305 of the Bankruptcy Code Can Relieve the Debtors of their Statutory Obligations to 150 Broadway Under Section 365(d)(3)**

  **(i)    The Bankruptcy Code Requires Payment of All Post-Petition Obligations within 60 Days of the Petition Date.**

10.    Section 365(d)(3) of title 11 of the United States Code (the "Bankruptcy Code") provides:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. ***The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, <u>but the time for performance shall not be extended beyond such 60-day period</u>.*** This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f) of this section. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

U.S.C. § 365 (emphasis added).

11.    The statute does afford a limited breathing spell: for cause, a Court allows an extension for up to 60 days, but the statute expressly and unambiguously prohibits any extension beyond 60 days after the petition date. "Congress enacted § 365(d)(3) to 'insure that the debtor-tenants [of nonresidential property] pay their rent, common area and other charges on time, pending the trustee's assumption or rejection of the lease.' 130 Cong. Rec. S8891, 599 (1984) (statement of Sen. Hatch)." *In re Simbaki, Ltd,* No. 13-36878, 2015 WL 1593888, at *2 (Bankr. S.D. Tex. Apr. 3, 2015). *See also In re Montgomery Ward Holding Corp.*, 268 F.3d 205, 209 (3d Cir. 2001) ("The clear and express intent of § 365(d)(3) is to require the trustee to perform the lease in accordance with its terms*"); In re Pac-West TeleComm, Inc.*, 377 B.R. 119, 123 (Bankr. D. Del. 2007) ("In simpler terms, the bankruptcy trustee must fulfill any obligation that arises under a non-residential lease after the filing of the bankruptcy petition").

5388675-1

12. The purpose of section 365(d)(3) is to ensure immediate payment of lease obligations so that a landlord is not providing services to the debtor but not being compensated. *See Morris v. Newman (In re McCrory Corp.)*, 210 B.R. 934, 936 (S.D.N.Y. 1997) ("[Section] 365(d)(3) requires debtor-tenants to provide landlords of nonresidential property full and timely payment"). It operates to prevent landlords from becoming involuntary creditors of the bankruptcy estates. *See In re Handy Andy Home Imp. Centers, Inc*., 196 B.R. 87, 95 (Bankr. N.D. Ill. 1996).

13. Therefore, section 365(d)(3) requires the Debtors to pay all post-petition obligations under the Lease, pursuant to its terms. The Debtors' obligations under section 365(d)(3) are independent of, and not subject to, the requirements for the allowance of administrative expenses pursuant to section 503(b)(1). *See In re Valley Media, Inc*., 290 B.R. 73, 77 (Bankr. D. Del. 2003) ("In other words, §365(d)(3) effectively reads: 'forget what § 503(b)(1) says' when the issue is pre-rejection period obligations of a nonresidential real estate lease"). Courts uphold the requirement of immediate payment—and the landlord's right to retain such payments—even when faced with an estate's later administrative insolvency. *See Valley Media*, 290 B.R. at 77; *In re Dieckhaus Stationers of King of Prussia, Inc.,* 73 B.R. 969, 972 (Bankr. E.D. Pa. 1987) ("[W]hile the court may extend, for cause, the deadline for payment of rental payments falling due within the sixty day period, the deadline may not be extended beyond the sixty day period itself").[2]

---

[2] The post-petition obligations due and owing to 150 Broadway include attorneys' fees. Article XXV of the Lease requires that with respect to any action brought thereunder, the non-prevailing party must pay the prevailing party's legal fees. 150 Broadway is entitled to payment of such fees as post-petition obligations payable under Bankruptcy Code section 365(d)(3). "The payment of attorney fees is an obligation of the lease that must be satisfied under section 365(d)(3) when the lease at issue provides for such recovery as an obligation of the Debtor." *In re Ames Dep't Stores, Inc*., 306 B.R. 43, 81 (Bankr. S.D.N.Y. 2004). *See also Pac-West TeleComm*., 377 B.R. at 126 (court awarding inquest as to legal fees payable under section 365(d)(3) where underlying lease contained prevailing party clause).

### (ii) The Bankruptcy Court's Equitable Powers Are Only Exercisable within the Confines of the Bankruptcy Code.

14. The Bankruptcy Court's equitable powers under section 105(a) of the Bankruptcy Code or otherwise do not allow for an extension of time to pay post-petition rent beyond the statutory deadline of May 11, 2020 (the first business day after 60 days of the Petition Date). Here, the 60-day statutory limitation contained in section 365(d)(3) is clear and unambiguous. As the Supreme Court has held, "A bankruptcy court may not contravene specific statutory provisions" of the Bankruptcy Code. *See, e.g., Law v. Siegel*, 571 U.S. 415, 421-22 (2014). Supreme Court jurisprudence has "long held that 'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code" (*citing inter alia*, *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988)). *See also In re Phila. Newspapers, LLC*, 599 F.3d 298, 328 (3d Cir. 2010) (statutes should not be interpreted to produce a result that is "demonstrably at odds with the intentions of the drafters[,]" such as a result that "conflicts with any other section of the Code"); *In re Morristown & Erie R. Co.*, 885 F.2d 98, 100 (3d Cir. 1989) ("Section 105(a) authorizes the bankruptcy court . . . to fashion such orders as are required to further the substantive provisions of the Code. Section 105(a) gives the court general equitable powers, but only insofar as those powers are applied in a manner consistent with the Code").

### (iii) Bankruptcy Code Section 305 Does Not Authorize Lopsided Suspension

15. 150 Broadway further submits that nothing in section 305 of the Bankruptcy Code—which allows Courts to suspend "**all** proceedings" under certain limited circumstances—allows for a partial suspension that affords debtors to take advantage of certain bankruptcy rights without having to adhere to their statutory burdens such as compliance with section 365 of the Bankruptcy Code.

7

16. Put simply, a partial "suspension" under Bankruptcy Code section 305 that grants debtors their statutory bankruptcy rights but deprives the corollary statutory rights afforded creditors is not a suspension at all, but rather a debtor windfall, wholly unsupported by law. A debtor cannot cherry pick which provisions of the Bankruptcy Code it will comply with and which one it will not, under the guise of a suspension.[3]

17. In short, 150 Broadway has a statutory right to payment of the Debtors' post-petition obligations at the end of the Suspension Period, but no later than May 11, 2020.

**B. The Debtors Must Provide Adequate Protection for the Timely Performance of Any Deferred Obligations Under The Lease**

18. 150 Broadway, as landlord, undeniably holds an interest in the property that it owns and leases to the Debtors as well as an interest in the lease itself, the rents due under that lease, and the proceeds of the Lease. Thus, with an interest in property being used by the Debtors, 150 Broadway is entitled to receive adequate protection.

19. Bankruptcy Code section 363(e) provides a basis for the grant of adequate protection to real property lessors in the form of budgeting and reserving funds to pay rent and related charges arising during both the initial the 60 day period, including stub rent and ongoing rent due thereafter. *See, e.g., Matter of Cont'l Airlines, Inc.,* 154 B.R. 176, 180 (Bankr. D. Del.

---

[3] The Debtors' position in this case concerning appellate review proves the incongruity that the Bankruptcy Code allows for a partial, or lopsided, suspension. In the immediate wake of certain landlords' appeal of the original Suspension Order, the Debtors took the public position that an appeal of the Suspension Order was improper because under Bankruptcy Code section 305(c) any order "suspending all proceedings in a case" is not reviewable. That may be so in connection with an order that actually suspended "all proceedings" as the statute provides. However, as set forth above, the Supreme Court has already established through normal Article III judicial review that a Bankruptcy Court's equitable powers are only exercisable within the confines of statute. It is inconceivable (and likely would be a violation of both Article III of the Constitution and the Due Process Clause of the Fifth Amendment of the Constitution) that Congress would enact legislation that allows non-Article III courts to declare which statutes of the Bankruptcy Code to apply and which statutes of the Bankruptcy Code to hold in abeyance and, with a citation to section 305, foreclose Article III review. The statute authorizes a suspension of "all proceedings" only, and is unambiguous. Any other reading would make section 305 rife for non-reviewable abuse.

5388675-1

1993) (finding that adequate protection is available under section 363(e) for a decrease in value due to the use, sale, *or lease* of an entity's interest in property) (emphasis added); *In re P.J. Clarke's Rest. Corp.*, 265 B.R. 392, 404 (Bankr. S.D.N.Y. 2001) (providing that a "landlord's right to adequate protection seems to follow clearly from the language of Section 363(e)").

20. In circumstances like those present, it is required that adequate protection take the form of cash payments for post-petition use of the premises. *See* 11 U.S.C. § 361; *In re Kellstrom Indus., Inc.*, 282 B.R. 787, 794 (Bankr. D. Del. 2002). If administrative insolvency is possible, as is the case here, simply allowing an administrative expense claim for the deferred lease obligations will not adequately protect 150 Broadway or any other landlord. *See* 11 U.S.C. § 361(3).

**C.    Collateral Surcharge Pursuant to Bankruptcy Code Section 506(c)**

21. To the extent 150 Broadway is not timely paid all of its post-petition obligations in accordance with the foregoing, 150 Broadway hereby formally objects to any section 506(c) waiver in any cash collateral order. Given the current posture of the case, and in the furtherance of their fiduciary duties, the Debtors cannot agree to any waiver of rights to surcharge the lender's collateral under section 506(c) of the Bankruptcy Code, including for unpaid post-petition obligations past due or as they become due. Here, the very unfortunate reality is that this is a liquidation with no going concern to benefit trade creditors or landlords or preserve jobs for employees after the liquidation is complete. The primary beneficiary of this case is the lender who is getting a full and complete liquidation of its collateral. It should not be permitted to do so at the expense of creditors and must "pay the freight" for the liquidation of its collateral.

**JOINDER TO OBJECTIONS RAISED BY OTHER LANDLORDS**

22. To the extent consistent with the objections expressed herein, 150 Broadway joins in the objections of any other lessors to the Debtors' proposed relief.

## CONCLUSION

**WHEREFORE**, 150 Broadway respectfully requests that this Court enter an Order (i) sustaining the Objection and denying the Debtors' request for further extension of the Suspension Period; (ii) awarding 150 Broadway payment of all post-petition obligations under the Lease on or prior to May 11, 2020; and (iii) such other relief as this Court deems just and proper.

Dated: New York, New York
April 24, 2020

**OLSHAN FROME WOLOSKY LLP**

By: /s/ *Adam H. Friedman*
Adam H. Friedman (*pro hac pending*)
Jonathan T. Koevary (*pro hac pending*)
Scott Shaffer
744 Broad Street, 16th Floor
Newark, New Jersey 07102
-and-
1325 Avenue of the Americas
New York, New York 10019
(212) 451-2300

*Counsel for 150 Broadway NY Associates, LP*

5388675-1